## CIRCUIT COURT OF HENRY COUNTY

Oakwood Acceptance Corp.

v.

Mesa Custer

August 22, 2002

BY JUDGE MARTIN F. CLARK, JR.

In analyzing this case, I would offer three principal observations. First, I have thoroughly reviewed the September 17, 1999, "Arbitration Agreement" executed by the defendant and counterclaim-plaintiff, Mesa Custer. Language in the arbitration agreement notes that it is a part of the retail installment contract signed by Custer, and there is an assertion in the arbitration agreement that it and the installment contract were executed contemporaneously. In my estimation, this raises a troubling issue for the original plaintiff, Oakwood Acceptance Corporation (hereinafter "Oakwood"), who now seeks removal of this case from circuit court into binding arbitration. While the second and seventh paragraphs of the arbitration agreement seek to limit and significantly curtail a party's right to seek redress in the state or federal court system and direct that many disputes must be settled only in arbitration proceedings, the sales contract, in conflict with this language, on page five, states in bold print: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO. . . .

Clearly, then, the holder of the Custer contract, *id est* Chase Manhattan Trust Company, is subject to *all claims* the debtor (Custer) could assert against the seller. This is broad, expansive language without limitation and would suggest that, despite the attempted arbitration restriction in another, separate document, Custer has an unfettered and absolute right to file all legally cognizable claims against the holder of her instrument, which would

include her counterclaims currently lodged in Henry County Circuit Court.[1] Succinctly put, this is a provision which is in conflict with the terms of the arbitration agreement, and this conflict — or, at a minimum,·this ambiguity — should be, by law, resolved against the drafter of the contract, in this case a sophisticated business entity. See, *e.g., Graham v. Commonwealth*, 206 Va. 431 (1965); *Charles Russell Co. v. Carroll*, 194 Va. 699 (1963). And, given that the resolution of the issues raised in Custer's counterclaim will necessarily be dispositive of the issues raised in Oakwood's initial pleading, this matter, *in toto*, should properly remain in the Henry County Circuit Court.[2]

Additionally, after reviewing the history, chronology, and timing of this case, especially Oakwood's initial filing — Oakwood brought this matter into the very forum it now wishes to flee — and its substantial use of the state court litigation machinery, it is my opinion that Oakwood has waived its right to compel arbitration. See, *e.g., Microstrategy, Inc. v. Lauricia*, 268 F.3d 244 (2001). I see no need to repeat the history of the case, as it is apparent from the file and also is recapitulated in Mr. Woodard's brief, but there has been nearly a year-long delay and substantial courtroom activity because of Oakwood's decision to file this matter in circuit court.

Also, Oakwood's decision initially to file in the circuit court and now to seek its remedies elsewhere has caused Custer, an individual, to spend significant funds in circuit court which will effectively be for naught if this case is removed to an arbitration forum. This is actual prejudice. Most critically, however, the defendant has also suffered real, dramatic, and actual prejudice as a consequence of Oakwood's filing and its utilization of the

---

[1] It is conceivable one might argue this provision is simply added to give appropriate notice to potential assignees, but clearly Custer is a beneficiary of and impacted by this language. Moreover, it is apparent from the language immediately following the "ALL CLAIMS" provision that the boldly printed "ALL CLAIMS" language is part of the bargain between Custer and Oakwood.

[2] Other theories of contract construction (1) would render the arbitration versus "all claims" terms a nullity if the conflict between the two cannot be reconciled, which would lead to the same result as above-stated, or (2) require both provisions to be given meaning and harmonized. In the latter instance, one interpretation which would give effect to every clause would be to allow all claims to be pursued in their usual forum, without restriction, when filed against assignees as the plain language states, but require all claims against the original seller or financing entity to proceed to arbitration. Again, if the language is so reconciled in this fashion, this case is properly in a state circuit court.

judicial system. Her home, pursuant to an order entered by this court on June 7th, 2002, and requested by Oakwood, is now or soon will be removed from her possession and released to Oakwood by virtue of a court order generated by this court. I can think of few legal consequences more significant or meaningful than being displaced from one's dwelling as a result of a courtroom proceeding.

Finally, assuming *arguendo* that I am mistaken about the conflict and/or ambiguity in the terms of the two contract components and I am also in error regarding Oakwood's waiver, I would point out that the arbitration agreement in question states "no act . . . to . . . otherwise dispose of any collateral securing payment or performance by the other party . . . shall be subject to this agreement." In the context of this case as it is now postured, Custer claims she holds a lien pursuant to subsection 3 of § 8.2-711 of the Virginia Uniform Commercial Code and is seeking this court's jurisdiction to enforce that lien. Consequently, by the terms of Oakwood's own agreement, Custer's U.C.C. claim involving her lien on the Oakwood mobile home and the disposition of this collateral is expressly outside the terms of the arbitration agreement.

In light of the foregoing findings, the motion to compel arbitration is denied.